## Case No. 17,157.

WARD et al. v. NEW ENGLAND SCREW CO.

[1 Cliff. 565.] [1]

Circuit Court, D. Rhode Island. Nov. Term, 1860.

GUARDIAN AND WARD—AUTHORITY TO SELL LAND—SPECIAL LEGISLATIVE AUTHORITY—CONSTRUCTION OF STATUTE—DEEDS—CONDITIONS PRECEDENT AND SUBSEQUENT.

1. Inasmuch as the legislature of a state may confer upon the courts the power of granting licenses for the sale of the estates of minors, and the investment of the proceeds, it may, it seems, also exercise the power directly by special act.

2. Such act is remedial, and cannot be distinguished in principle from a general law upon the same subject.

---

[1] [Reported by William Henry Clifford, Esq., and here reprinted by permission.]

3. In this case the act of the legislature was not an exercise of the power of eminent domain.

4. A guardian petitioned the legislature for leave to sell a portion of the minors' estate to a town, "to erect a pest-house upon." Leave was granted by special act to sell the land "for the said purpose," and to invest the proceeds for the benefit of the minors: and the act, moreover, provided that the deed should "vest in the purchaser all the right, title, and interest" that the parent of the minors had in the estate. *Held*, that the guardian was authorized by the act of the legislature to sell all the right, title, and interest in the property which the parent of his wards in his lifetime possessed, and to make and execute a sufficient deed for that purpose.

5. Pursuant to that license a conveyance of the land was made to the town treasurer or his successors in office forever, "to erect a pest-house upon," to enjoy "in the manner aforesaid," "discharged from all manner of encumbrances," and in the granting clause it purported to be an absolute and full conveyance of the land, without condition. *Held*, that the words "to erect a pest-house upon" were merely descriptive of the use to which the town intended to put the land, at the time of purchase, and were not intended as a condition in the grant, or a limitation of the estate conveyed.

6. Whether conditions in a conveyance be precedent or subsequent, as there are no technical words to distinguish them, is a matter of construction, and depends upon the intention of the party creating the estate.

7. Conditions subsequent are not favored in law, and must be strictly construed.

8. The habendum of a deed was as follows: "To have and to hold the said bargained and granted premises with all the privileges and appurtenances thereto belonging, or in any wise pertaining, for the use aforesaid, forever." *Held*, the words "for the use aforesaid" could not be construed as a condition in the grant, or a limitation to the estate.

This was an action of trespass and ejectment to recover possession of a tract of land situated in the southerly part of the city of Providence. Special pleas were filed by the corporation defendants, setting up title in themselves. To each of these pleas the plaintiffs [Andrew H. Ward and wife and others] filed a replication traversing the matters of fact set forth in the pleas, and tendering an issue to the country. They also filed a special replication controverting the title set up by the defendants, and setting up a title in themselves to a moiety of the premises by descent in regular succession, through one George Field, and to the other moiety by virtue of a quit-claim deed from one Mary Manchester, who was the sister of George Field. George and Mary Field were the children and heirs of Isaac Field, who died in 1781; and the land in controversy, together with other real estate, descended to them at the decease of their father, as tenants in common. George Field subsequently died, leaving one son as his sole heir, who also died, leaving as his lawful heirs two daughters, Anna H. and Mary G., who were plaintiffs in this suit. Mary Field married Isaac Manchester, who died, leaving her a widow; and on September 21, 1855, she, in consideration of ten dollars, released all her title in the premises to Anna H. and Mary G., to whom,

as the plaintiffs alleged, the other moiety descended, in regular succession, from George Field. On the other hand, the title of defendants, as disclosed in the plaintiffs' replication, was also derived through George and Mary Field, to whom the premises descended at the decease of their father. He died intestate, leaving two minor children, George and Mary. Their mother, Martha Field, administered upon the estate of their father, and was appointed their guardian. As administratrix and guardian, she petitioned the general assembly of the state for authority to sell a portion of their real estate, which petition was granted at the session held at Bristol, on the fourth Monday of August, 1785; and, pursuant to the authority so granted, she conveyed the land in controversy to the town of Providence, under whom defendants claim title. The following was the act of assembly: "Whereas Martha Field of Providence, in the county of Providence, widow and administratrix of the estate of Isaac Field, late of said Providence, deceased, and guardian to the heirs of the said estate, preferred a petition, and represented unto this assembly, that the committee appointed by the town of Providence, to procure a convenient place to erect a small-pox house for the use of said town, having made choice of a remote corner of the real estate of the said deceased, adjoining Providence River and Hawkins Cove, so called, as the most commodious spot within the bounds of the said town, for the said purpose, have applied to her to sell about two acres a half of the said land to the said town; and that she is desirous of accommodating the said town, and the said land is of but very little consequence to the said estate, the soil being barren; and thereupon, the said Martha Field prayed this assembly to empower her to sell the said land to the said town for the said purpose. On consideration whereof, be it enacted by this general assembly, and by the authority thereof it is enacted, that the prayer of said petition be granted; that the said Martha Field be, and she is hereby, authorized to make sale of the said two acres and a half of land for the said purpose; that a deed thereof, made and executed pursuant to this act, shall vest in the purchaser all the right and interest of the said Isaac Field in and to the same; that the money arising therefrom be appropriated to the use of the said heirs; that the said sale be under the direction of the town council of Providence; and that she account with the said council for the appropriation of the money."

Omitting unnecessary portions, the deed was in the following terms: "To all people unto whom these presents shall come: I, Martha Field of Providence, county of Providence, state of Rhode Island and Providence Plantations, widow, send greeting: Know ye, that I, the said Martha Field, widow, by the authority given to me by the general assembly of the said state, at their session held at Bristol, on the fourth Monday of August, A. D. 1785, to sell and convey to the said town of Providence a certain piece of land for the purpose of erecting a pest-house upon; for and in consideration of the sum of one hundred and nine Spanish silver milled dollars and three eighths of a dollar, in hand before the ensealing hereof, well and truly paid by James Arnold, Esq., of said Providence, in the county and state aforesaid, town treasurer of said town, the receipt whereof I do hereby acknowledge, and myself therewith fully satisfied, contented, and paid, and thereof and of every part and parcel thereof do exonerate and acquit and discharge him, the said James Arnold, his heirs and successors, as town treasurer of the said town, forever, by these presents. Have given, granted, sold, conveyed, and confirmed, and by these presents do freely, fully, and absolutely give, grant, sell, convey, and confirm unto him, the said James Arnold and his successors in office as town treasurer of said town of Providence, forever, in trust for said town, a certain piece or tract of land lying and being in the town of Providence aforesaid, and is butted and bounded as followeth:  . . . . To have and to hold the said granted and bargained premises, with all the appurtenances and privileges thereto belonging or in any wise appertaining to him, the said James Arnold and his successors in the office of town treasurer of said town of Providence, for the use aforesaid forever. And I, the said Martha Field, for myself, my heirs, executors, and administrators, do promise, covenant, and grant to and with the said James Arnold, his successors in office as aforesaid, that I have good right and lawful authority to grant, sell, bargain, convey, and confirm the said bargained premises in manner as aforesaid. And that the said James Arnold and his successors in the office of town treasurer, in trust for the said town of Providence, shall and may from time to time, and at all times forever hereafter, by force and virtue of these presents, lawfully, peaceably, and quietly hold, occupy, possess, and enjoy the said demised and bargained premises in manner as aforesaid, with all the privileges and appurtenances thereto belonging, freely and clearly acquitted, exonerated, and discharged from all manner of encumbrances, of what name or nature soever, that might in any measure obstruct or make void this present deed. Furthermore, I, the said Martha Field, for myself, my heirs, executors, and administrators, the above demised premises to the said James Arnold, his successors in office as aforesaid, against the lawful claims or demands of all persons, forever will warrant and defend by these presents."

It was claimed by the plaintiffs that the guardian of George and Mary Field was authorized only to convey the premises to the town of Providence as a site for the erection of a small-pox house for the use of the town, and that, by the true construction of the deed

and act of assembly authorizing the same, the land in controversy was conveyed for that purpose only, and upon the implied condition that it should revert to the minors whenever the town of Providence ceased to use it for such purpose. They further alleged that the city of Providence, successors to the town of Providence, had long ceased to use and occupy the premises, and conveyed the same to the defendants, who had appropriated them to a use different from that specified in the deed. To the special replication the defendants demurred, and the plaintiffs joined in the demurrer. On the part of the defendants it was insisted that the deed of Martha Field vested in the town of Providence an absolute estate in fee simple, clogged by no condition or limitation.

G. H. Brown, for plaintiffs.

A contingent interest in the estate remained in the owners at the time of the conveyance, entitling them or their heirs to the possession thereof, whenever the same ceased to be used for the purposes expressed in the act and deed. Hayden v. Stoughton, 5 Pick. 528; Brigham v. Shattuck, 10 Pick. 308; Clapp v. Stoughton, 10 Pick. 463. Were this the case of a common purchase, authorities are not wanting tending to show that the words employed in the habendum of this deed created a conditional fee. 2 Co. Litt. 203a, § 328; 4 Kent, Comm. 132; 2 Greenl. Cruise (2d Ed.) 729; 2 Bl. Comm. 154. 155; 3 Greenl. Cruise (2d Ed.) 432; Wheeler v. Walker, 2 Conn. 196; Austin v. Cambridgeport Parish, 21 Pick. 215; Police Jury v. Reeves, 6 'Mart. [N. S.] 221; Stuyvesant v. Mayor, etc., of New York, 11 Paige, 427; Hayden v. Stoughton, 5 Pick. 528; Town of Castleton v. Langdon, 19 Vt. 210; Parsons v. Miller, 15 Wend. 564. This, however, was not a common purchase, but a grant by the sovereign power, and is analogous to a grant from the king. Such being the case, it is clear that the words employed in the habendum of the deed are the technical words. if any are necessary, to create a condition. 2 Co. Litt. 204a, § 330. The modern rule of interpretation, as applicable to all deeds, is to give effect to the whole and every part of the instrument. whether it be a will or deed, or any other contract. 2 Greenl. Cruise (2d Ed.) 468, and notes; Id. 586 et seq. and notes, passim. The act of assembly. also, being a legislative act, is to be construed according to the intention and power of the legislature, apparent upon its face. Every technical rule, as to the construction or force of particular terms, must yield to the clear expression of the paramount will of the legislature. Wilkinson v. Leland, 2 Pet. [27 U. S.] 662. It was obligatory on the town of Providence to hold and occupy these premises for the purposes of a pest-house, or forfeit the estate. In the case of a grant by a private citizen, the rule is, that the deed shall be taken most strongly against the grantor: but in the case of a grant by the sovereign power, it is to be construed most strongly against the grantee, and nothing will pass by implication. 2 Greenl. Cruise (2d Ed.) 912 et seq., and the numerous cases cited in the notes. The authority conferred by this act of assembly was an exercise of the prerogative right of eminent domain. Then it follows that, as the purpose for which the land was conveyed has ceased, the plaintiffs are entitled to have these premises, as of the former estate of the persons, owners, through or under whom they claim. Westbrook v. North, 2 Greenl. 179; Town of Hampton v. Coffin, 4 N. H. 517; Harrington v. Commissioners, 22 Pick. 263; People v. White, 11 Barb. 26, and cases cited; Bonaparte v. Camden R. Co. [Case No. 1,617]. The legislature has no right to take the property of one person without his consent, and transfer it to another, or authorize the same to be done, even for a full compensation, except by virtue of the right of eminent domain. Ang. & D. High. 55, and cases cited; 2 Kent, Comm. 339, and cases cited; Wilkinson v. Leland. 2 Pet. [27 U. S.] 657. Besides, it plainly appears from the act and deed themselves, that the purpose and object of the conveyance was of a public, and not a private nature; that the act and deed were made without the concurrence of the owners, and that the public alone were to be benefited by the transaction. No particular mode of exercising the right of eminent domain is necessary. It may be exercised by the government, through its immediate officers or agents, or indirectly, through the medium of corporate bodies or private individuals. Pittsburgh v. Scott, 1 Barr. [1 Pa. St.] 314; Wilson v. Blackbird Creek Marsh Co., 2 Pet. [27 U. S.] 251; West River Bridge Co. v. Dix. 6 How. [47 U. S.] 507; 2 Greenl. Cruise (2d Ed.) 477, 563, 723.

T. A. Jenckes, for defendants.

To make a clause in an instrument of conveyance a condition, on the non-performance of which a forfeiture results. or in consequence of which the grantee holds only a base or determinable fee, certain clear and express terms are required. And this is equally true of limitations. Whether words amount to a condition. or a limitation. or a covenant, may be a matter of construction depending upon the contract. Conditions and limitations are not readily to be raised by mere inference and argument. 4 Kent, Comm. 123 et seq.; Id. 132, note, and cases cited. The words usually employed in creating a condition are, "upon condition"; and this. says Lord Coke, is the most appropriate expression; or the words may be "so that; provided: if it shall happen," &c. The apt words of limitation are "while; as long as; until; during." &c. The words "provided always" may. under the circumstances. be taken as a condition, or as a limitation, and sometimes as a covenant. 4 Kent, Comm. 132; Co. Litt. 203a, 203b; Bac. Abr. tit. "Condition." A and H: 1 Greenl. Cruise, 3. The ancestor of the plaintiffs parted with

the entire title. This estops any claim that there was a dedication by that ancestor. City of Cincinnati v. White's Lessee, 6 Pet. [31 U. S.] 431–438. And as to the principle on which dedication rests. Beatty v. Kurtz, 2 Pet. [27 U. S.] 566; Barclay v. Howell, 6 Pet. [31 U. S.] 498; Irwin v. Dixion, 9 How. [50 U. S.] 10; Hills v. Miller, 3 Paige, 254. This conveyance must be construed according to the well-established rules of law. The intent of the parties, the circumstances attending the sale, the particular situation of the parties, the state of the country and the thing granted at the time,—are all to be considered. Adams v. Frothingham, 3 Mass. 352. That construction of an instrumnt is to be favored which is most strongly against the grantor, particularly when the instrument may be capable of two constructions. Cocheco Manuf'g Co. v. Whittier, 10 N. H. 308; City of Alton v. Illinois Transp. Co., 12 Ill. 38. The intention of the parties, when clearly ascertained, is of controlling efficacy. That intention is to be collected from the words of the deed as expressive of and defining the meaning of the parties. The deed is to be construed most favorably to the grantee, if there is any doubt about the meaning of the parties. 4 Kent, Comm. 132; Howard v. Rogers, 4 Har. & J. 281. It is submitted that the words referred to can be properly construed in no other way than as words of description. That they were inserted not to operate as a condition, but for the special and express purpose of preventing any claim by the grantors or their heirs upon the town, for injury to the surrounding and adjoining estates by the nuisance which this pest-house might thereafter become.

CLIFFORD, Circuit Justice. To solve the matter in dispute, it becomes necessary to attend with some care to the language both of the act of assembly and of the deed. Both parties concede that Martha Field was the duly constituted guardian of George and Mary Field, and it is not questioned by either that she petitioned for authority to sell a portion of the estate of her wards. By the preamble to the act of assembly, it appears that she represented in her petition that a committee appointed by the town to procure a place to erect a small-pox house, for the use of the town, had made choice of a remote corner of the estate of her wards, and had applied to her to sell the same to the town. She also represented that the part applied for was barren, and of little consequence; and being desirous of accommodating the town, she prayed that she might be empowered to sell the same to the town for that purpose. After reciting these facts in the preamble, the act of assembly, among other things, provides that the said Martha Field be, and she is hereby, authorized to make sale of the said two acres and a half of land for the said purpose; and that a deed thereof, made and executed pursuant to this act, shall vest in the purchaser all the right, title, and interest of the said Isaac Field in and to the same; and it also provides

that the money arising therefrom be appropriated to the use of the said heirs, and that the sale be made under the direction of the town council of Providence, with the usual provision, requiring the guardian to account with the said council for the appropriation of the money. On the face of the act, it is apparent that the legislative assembly intended to exercise the power of granting a license for the sale of that portion of the minors' real estate. That conclusion rests, not only upon the fact that the legislative act is based upon the petition of the administratrix of the estate and the guardian of the minors, but upon the express declaration that a deed made and executed in pursuance of the authority granted should vest in the purchaser all the interest which descended to the minors at the decease of their father. Most of the states have general laws making provision for the sale of estates of minors by their guardians, either for their support or education, or to pay their just debts, or for the purpose of changing the investment. Such laws generally require a license from some court of record; and the license is not usually granted, except on petition of the guardian, and after public notice to all interested. No one probably at this day would question the validity of such a general law to provide for the granting of licenses to authorize the sale of such estates, whether the authority was conferred upon a court of general jurisdiction, or a district or county court, or even upon the court of probate. Assuming that the legislature may confer such power upon the courts of a state, for the sale of a minor's real estate, and for the investment of the proceeds, it is difficult to see any reason why the legislature may not exercise the power directly by special act. Clearly, the character of the act in question is remedial, and in point of fact it has no other characteristic; and we think it cannot be distinguished in principle from a general law upon the same subject. Authority is given to sell the land and invest the proceeds, but a sale is not ordered or directed; nor is there a word in the act to control the legal discretion vested in the guardian. She was left to fix the terms of sale without restraint, and to sell or not, as she might thereafter determine to be best for the interest of her wards. But it is insisted by the plaintiffs, that the act in question is not one where the legislature attempted to exercise its tutelary power over the estates of minors or other persons incapable of disposing of the same. On the contrary, it is insisted that it was the exercise, on the part of the legislature, of the power of eminent domain. Looking at the whole act, however, there does not appear to be any foundation for the proposition; and sufficient has already been remarked, we think, to demonstrate its fallacy. Whatever is said respecting the use to which the land was to be applied by the town was mere inducement to the legislative assembly to grant the prayer of the petition; and that remark applies with equal force to every one of the phrases in the recitals of the preamble, on which the theory of the plaintiffs is based. Uni-

versal experience teaches that the tribunals intrusted with the ultimate power of granting licenses in cases of this description find it necessary, as it is their duty, to examine each particular application with scrutiny, and to exercise a careful supervision over the rights of those interested in the estate. Consequently the petitioner is required to assign solid reasons for the application, and oftentimes finds it prudent to introduce defensive allegations against the inference of interested motives. Allusion was accordingly made in this case to the promotion of the public health, to guard against any such suspicion, and to show that the petitioner did not originate the suggestion.

Another allegation in the petition is, that the land was barren, and of little consequence; and that representation was doubtless made, not only to show that the residue of the estate would not be injured by the sale, but also to show that a change of investment would be beneficial to the minors. Unconditional provision was made in the act that the money should be appropriated to the use of the heirs; and it was expressly provided that the sale should be made under the direction of the town council. At that period in the history of the state the town council, so called, exercised all the ordinary powers of a court of probate; and it was also provided, in effect, that the guardian should account to the town council for the proceeds of the sale. Without entering more into detail, suffice it to say, that we are of the opinion that, by the true construction of the act of assembly, it must be understood as conferring a license upon Martha Field, guardian of George and Mary Field, to sell such portion of the real estate of her wards as was therein described, and to invest the proceeds of the sale for their benefit, under the direction of the town council of Providence; and she was not only authorized to sell the land, but to make and execute a sufficient deed to vest in the purchaser all the right, title, and interest in and to the same which descended to her wards from their father.

Having ascertained the true nature and extent of the authority conferred upon the guardian, it only remains to consider and determine in what manner that authority was exercised. As described in the deed, the parcel of land sold and conveyed contained two acres and thirty poles; and it was sold, as appears from the consideration recited in the deed, for the sum of one hundred and nine and three eighths Spanish milled dollars. Nothing, therefore, can be inferred in favor of the theory of the plaintiffs from any supposed inadequacy of consideration, as fifty dollars an acre, at that period of time, for barren land, situated in a remote corner of the town of Providence, may well be assumed as its fair value. Among other things, the deed shows that the conveyance was made to the town treasurer, or his successors in office, forever, in trust for the town; and in the granting clause it purports to be a full, free, and absolute conveyance of the land, without condition or limitation. But the introductory part of the instrument, preceding the granting clause, refers to the authority to sell and convey, as derived from the act of assembly, and in that connection recites the purpose the town had in view in making the purchase. Considering, however, that the same recital was inserted in the act of assembly, which, nevertheless, authorized an absolute conveyance of all the right, title, and interest of the minors in the premises, we are of the opinion that the words "for the purpose of erecting a pest-house upon" are merely descriptive of the use to which it was the intention of the town, at the time of the purchase, to apply the land, and that they were not inserted as a condition in the grant, or as a limitation or qualification to the estate conveyed. They would scarcely have that effect even if taken separately, but when considered in connection with the words of the granting clause it is quite obvious, we think, that the parties never intended to give them any such signification. When considered in connection with the other parts of the instrument, it is much more reasonable to suppose that they were inserted for the benefit of the purchaser. Undoubtedly it was the intention of the town to erect a small-pox house on the land purchased; and it may well be that the recital was inserted in the deed to foreclose all future complaint against such an appropriation of the premises. Be that as it may, it must, nevertheless, be assumed that if the grantor had intended to create any such condition or limitation to the estate as is supposed by the plaintiffs, she would have employed, either in the granting clause or the habendum of the deed, some fit and proper language to signify such an intention. Nothing of the kind is pretended by the plaintiffs, so far as respects the granting clause, but reliance is placed upon the concluding phrase of the habendum, as tending to support that theory. As given in the instrument, the habendum reads as follows: "To have and to hold the said granted and bargained premises, with all the privileges and appurtenances thereto belonging or in any wise appertaining. . . . for the use aforesaid, forever." Conditions in a conveyance are either precedent or subsequent; and as there are no technical words to distinguish them, it follows that whether they be the one or the other is a matter of construction, and depends upon the intention of the party creating the estate. Hotham v. East India Co., 1 Term R. 645; Finlay v. King's Lessee, 3 Pet. [28 U. S.] 374. Precedent conditions are such as must take place before the estate can vest, and must be literally performed. Subsequent conditions are those which operate upon estates already created and vested, and render them liable to be defeated or forfeited. 4 Kent, Comm. (9th Ed.) 125. Most of the estates upon condition in law are of the latter kind, and are liable to be defeated upon breach of the condition, as on failure to pay rent, or the non-performance of other services annexed to the estate.

Where a devise of lands was made to a town for a school-house, provided it should be built within a hundred rods of a given place, the proviso was held to be valid, as a condition subsequent, and that the estate was forfeited by a neglect to fulfil the condition for a period of twenty years. Hayden v. Stoughton, 5 Pick. 539. Unquestionably a breach of the condition authorizes the heir to enter; and if he make good his claim, he may hold the land, although it was vested for a time in the grantee or devisee. Shep. Touch. 450; 2 Bl. Comm., by Shars. 155. Conditions subsequent, says Chancellor Kent, are not favored in law, and are to be construed strictly, because they tend to destroy estates; but whether so or not, it is clear that they are not to be implied, unless it appear from the language employed in the instrument that such was the intention of the parties. Merrifield v. Cobleigh, 4 Cush. 178; Catlin v. Springfield Fire Ins. Co. [Case No. 2,522]; Doe v. Bancks, 4 Barn. & Ald. 401; Co. Litt. 205b; 4 Kent, Comm. (9th Ed.) 146. Certain words and phrases, it is said, make an estate conditional, of themselves, without expressly giving the power of entry; and examples to that effect are given in several standard treatises upon the subject of conditional estates. Co. Litt. 203a, 203b; Litt. Ten. (by Toml.) 374; 2 Greenl. Cruise, 3; 2 Bac. Abr. (by Bouv.) tit. "Condition," a, h, 280, 287. None of the words, however, put by the elementary writers as examples of what will create a condition in a deed of conveyance, are to be found in the deed in this case, nor any other which, properly understood, falls within the same category. Deeds, as well as other written instruments, ought in general to receive a liberal construction so as to uphold them, if possible, and carry into effect the intention of the parties. Effect ought to be given, if reasonably practicable, to every part of the instrument; and in order to accomplish that object, it is indispensably necessary to compare one part with another, and apply the whole to the subject-matter described in the instrument.

Applying these rules to the present case, it is quite obvious that the words of the habendum, "for the use aforesaid, forever," cannot possibly be construed as a condition in the grant, or as a limitation to the estate. Those words must be taken in connection with the words of the granting clause, which clearly show that it was the intention both of the grantor and grantee to convey an absolute unconditional estate; and they must also be weighed and interpreted in connection with what follows in the same instrument. Contrary to what is usual in conveyances of this description, the grantor not only covenants that she has good right and lawful authority to sell and convey the described parcel of land, but also covenants that the grantee shall quietly and peaceably enjoy the premises in manner aforesaid, and that she will forever warrant and defend the same against the lawful claims and demands of all persons. Comparing one part of the instrument with another, and the whole with the act of assembly authorizing the sale, not a doubt is entertained by the court that it was the intention of the grantor to convey to the town of Providence all the right, title, and interest which her wards acquired in the premises by descent at the decease of their father. Two theories are suggested as to the precise signification of the particular words under consideration, either of which appears to be more reasonable, and more in consonance with the general tenor and scope of the instrument, and consequently to be preferred to that suggested by the plaintiffs. One is, that they must be regarded as a substitute for the words "in trust for said town," which are contained in the granting clause of the instrument, and that they were inserted to exclude the conclusion that the conveyance was made for the individual benefit of the grantee named in the deed. Another is, that they were employed merely as descriptive of the purpose which the town had in view in making the purchase; but whether the one or the other, it is nevertheless obvious that they were not employed as creating a condition in the conveyance, or as a limitation to the estate. Such a construction would be a forced one, even if the words were separately considered; but when the phrase is compared with the other parts of the instrument, and the act of assembly authorizing the sale, it is clear that it cannot be sustained. Neither the act of assembly nor the deed affords any evidence that the town had agreed with the grantor to make the contemplated erection on the premises, or that she thought it of consequence to stipulate that the land should be appropriated to that use; and in the absence of any such stipulation or agreement, it can hardly be inferred that the adjacent proprietors are damaged by its discontinuance. For these reasons, we are of the opinion that the demurrer of the defendants to the plaintiffs' special replication must be sustained, and judgment must be entered accordingly.